551 A.2d 905

**Michael WILLIAMS**

v.

**STATE of Maryland.**

**No. 534, Sept. Term, 1988.**

Court of Special Appeals of Maryland.

Jan. 10, 1989.

Gary S. Offutt, Asst. Public Defender (Alan H. Murrell, Public Defender, on the brief), Baltimore, for appellant.

Cathleen C. Brockmeyer, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen. and Stuart O. Simms, State's Atty. for Baltimore City, on the brief), Baltimore, for appellee.

Submitted Before BISHOP, ALPERT and ROBERT M. BELL, JJ.

ALPERT, Judge.

Michael Williams was charged with assault with intent to murder, assault, carrying a handgun, and use of a handgun in the commission of a crime of violence. An appearance on his behalf was entered by John J. Henderson, Assistant Public Defender. Immediately before trial in the Circuit Court for Baltimore City, it appears that unsuccessful plea negotiations were conducted. After these negotiations failed, the defendant stated, "I want another representative." His request was denied by the judge:

THE COURT: No, sir, at this point we are going to proceed. This is not going to be a harangue or filibuster. Mr. Henderson is your lawyer, very highly respected among the Bar, very well-prepared. All he has done is indicated what, communicated the offer to you. The offer has been turned down. You are now going to trial. Arraign the defendant.

The defendant made no further objections, and the trial commenced with his defense conducted by Mr. Henderson.

At the conclusion of trial, the trial judge gave his instructions to the jurors. The court stated that in order to be convicted of using a handgun in a crime of violence, the defendant must be found guilty of a crime of violence. He continued by stating that assault with intent to murder is a crime of violence, but simple assault is not. He made it clear to the jurors that a conviction for use of a handgun in the commission of a crime of violence may not be preceded by an acquittal of the crime of violence. Such a verdict would be inconsistent.

After deliberations, the jury acquitted appellant on the assault with intent to murder charge but convicted him of assault, "carrying a handgun," and use of a handgun in the

commission of a crime of violence. The defendant moved for a new trial on the basis that conviction of use of a handgun in a crime of violence is inconsistent with an acquittal on the only crime of violence charged, *i.e.*, assault with intent to murder. The trial court denied the appellant's motion for a new trial. Appellant was sentenced to six years imprisonment for the assault, three years imprisonment for carrying a handgun, and six years imprisonment for use of a handgun in the commission of a crime of violence, the sentences to run concurrently. He appealed, presenting two issues for our review:

1. Did the trial court's refusal to permit appellant to state his reasons for wanting to discharge his trial counsel entitle appellant to a new trial?
2. Did the trial court err when it denied appellant's motion for new trial?

## I. *Violation of Maryland Rule 4–215(e)*

■ The appellant contends that the trial court erred when it refused to allow him to articulate his reasons for requesting a different attorney. He argues that Maryland Rule 4–215(e) requires that the court permit a defendant to explain his reasons for discharging counsel. Thus, he submits that refusal by the trial court to allow him to articulate such reasons is reversible error. Rule 4–215(e) provides:

**(e) Discharge of Counsel—Waiver.**—If a defendant requests permission to discharge an attorney whose appearance has been entered, *the court shall permit the defendant to explain the reasons for the request.* If the court finds that there is a meritorious reason for the defendant's request, the court shall permit the discharge of counsel; continue the action if necessary; and advise the defendant that if new counsel does not enter an appearance by the next scheduled trial date, the action will proceed to trial with the defendant unrepresented by counsel. If the court finds no meritorious reason for the defendant's request, the court may not permit the discharge of counsel without first informing the defendant that the trial will proceed as scheduled with the defendant

unrepresented by counsel if the defendant discharges counsel and does not have new counsel. If the court permits the defendant to discharge counsel, it shall comply with subsections (a)(1)–(4) of this Rule if the docket or file does not reflect prior compliance.

It is obvious that the trial court violated Rule 4–215(e) in that the court did not "permit" the defendant to articulate his reasons for requesting a different attorney to represent him, *i.e.,* the trial judge did not solicit appellant's reasons, nor did appellant seek to offer any. Having determined that the court violated the rule, we must now decide whether such a violation, under the circumstances presented, constitutes reversible error.

Our analysis may best be brought into sharp focus by first examining what did not occur here. At no time did the appellant request that he be allowed to represent himself. By qualifying for representation by the Public Defender's Office, he did not appear to have the resources to retain a private attorney. The appellant did not proceed to trial without the assistance of an attorney. Even on appeal, the appellant does not allege that he was at any time without the effective assistance of counsel. Nor does he now contend that he would have preferred self-representation. What did occur here was that the court refused the defendant's request for substitute representation, and the case proceeded to trial with the defendant fully represented by the attorney originally appointed by the Public Defender's Office.

In examining Rule 723 (a predecessor to Rule 4–215), this court, in *Wright v. State,* 48 Md.App. 185, 425 A.2d 1385 (1981), stated:

> We cannot permit ourselves to forget the reason Maryland Rule 723 was adopted in the first place, and the end which it serves today. The rule provides an orderly procedure to insure that each criminal defendant appearing before the court be represented by counsel or, if he is not, that he be advised of his Sixth Amendment constitutional right to the assistance of counsel, as well as his

correlative constitutional right to self-representation. In short, and as our Courts have said many times, the rule 'implements the constitutional mandates'; but it does neither more nor less than that.

*Id.* at 191, 425 A.2d 1385. Subsection (e) to Rule 4–215 was added subsequent to our decision in *Wright, supra,* but the same purpose can be attributed to it. Therefore, we should examine the requirements of the Sixth Amendment to determine whether the trial court's violation of the rule constitutes reversible error *per se.*

A criminal defendant has the constitutional right to be represented by an attorney or to proceed *pro se* to defend himself. *See Snead v. State,* 286 Md. 122, 123, 406 A.2d 98 (1979). Where the issue is a defendant's right to counsel of choice, a distinction is made between a defendant who wishes, and can afford, to retain a private attorney and an indigent defendant who has an attorney appointed for him. In the former case, the defendant has a right to counsel of choice;[1] while in the latter case the defendant possesses no right of choice. *See United States v. Nichols,* 841 F.2d 1485, 1504 (10th Cir.1988); *United States v. Ely,* 719 F.2d

---

1. Even this right to choice of counsel for criminal defendants who are financially able to retain private counsel is not all encompassing:
   A defendant's choice of counsel may be denied by a court's refusal to grant a continuance necessary to allow the chosen attorney to participate in the case. This issue has arisen when a defendant had not obtained an attorney by the time of trial; when a chosen attorney claimed that he or she had inadequate time to prepare for trial; when a chosen attorney was unavailable because of illness; or a scheduling conflict; or when a defendant sought to obtain a new attorney immediately before, or during trial. In such instances, the court must balance a variety of factors, including the government's interest in the efficient administration of the trial and the defendant's interest in preserving chosen counsel, in deciding whether to grant a continuance. *See, e.g., [United States v.] Kelm,* 827 F.2d [1319,] 1322 n. 2 [ (9th Cir.1987) ] (listing five factors); *[United States v.] Burton,* 584 F.2d [485,] 490–91 [ (D.C.Cir.1978) ] (listing eight factors). The trial court is afforded broad discretion in deciding whether to grant a continuance. *Morris [v. Slappy* ], 461 U.S. [1,] 11–12, 103 S.Ct. [1610] at 1616–17 [75 L.Ed.2d 610 (1983) ]. *United States v. Nichols,* 841 F.2d at 1504. Thus, this right to choice of counsel may be pre-empted where judicial economy and the efficient

902, 904–05 (7th Cir.1983), *cert. denied,* 465 U.S. 1037, 104 S.Ct. 1313, 79 L.Ed.2d 710 (1984); *Colvin v. State,* 299 Md. 88, 100, 472 A.2d 953 (1984); *State v. Renshaw,* 276 Md. 259, 270, 347 A.2d 219 (1975). *Cf., Morris v. Slappy,* 461 U.S. 1, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983) (no Sixth Amendment right to a meaningful attorney-client relationship for a criminal defendant).

Unlike the situation where a trial court's violation of a Rule 4–215 procedure compels a criminal defendant to represent himself where it has not been determined that he waived his right to counsel, *see Maus v. State,* 311 Md. 85, 532 A.2d 1066 (1987), or where a violation occurs because an inquiry as to whether a defendant has invoked his right to self-representation was not conducted, *see Snead, supra,* constitutional mandates are not *per se* violated by a court where it refuses to allow an indigent defendant to specify his or her reasons for requesting a substitute attorney.[2] *Accord United States v. Dilworth,* 524 F.2d 470, 472 (5th Cir.1975), *rehearing denied* 528 F.2d 928 (5th Cir.1976); *State v. Stinson,* 424 A.2d 327, 330 (Me.1981); *Commonwealth v. Flowers,* 5 Mass.App. 557, 365 N.E.2d 839, 845

---

administration of trial are deemed by the trial court to be of paramount consideration.

**2.** In reaching this decision, we note our disagreement with the breadth of California case law that has evolved from the case of *People v. Marsden,* 2 Cal.3d 118, 84 Cal.Rptr. 156, 465 P.2d 44 (1970). In *Marsden,* the Supreme Court of California stated:

Thus, a judge who denies a motion for substitution of attorneys solely on the basis of his courtroom observations, despite a defendant's offer to relate specific instances of misconduct, abuses the exercise of his discretion to determine the competency of the attorney. A judicial decision made without giving a party an opportunity to present argument or evidence in support of his contention "is lacking in all the attributes of a judicial determination." (*Spector v. Superior Court,* 55 Cal.2d 839, 843, 13 Cal.Rptr. 189, 192, 361 P.2d 909, 912 (1961)).

*Id.* 84 Cal.Rptr. at 160, 465 P.2d at 48. To the extent that *Marsden* establishes a *per se* rule of reversible error even where the defendant continues to be represented by counsel throughout the proceedings and no contention of inadequacy of counsel is made, even on appeal, *People v. Blake,* 105 Cal.App.3d 619, 622, 164 Cal.Rptr. 480 (1980), we respectfully disagree with the California court.

(1977). A violation of Rule 4–215(e) will only give rise to reversible error where a constitutional right has been infringed. An indigent criminal defendant's right to counsel under the 6th Amendment is not a right to choice of counsel, but it is the right to the effective assistance of counsel. *See Fowlkes v. State,* 311 Md. 586, 605, 536 A.2d 1149 (1988). It follows that the only legitimate claim an indigent criminal defendant could make to retain different counsel is that he has been deprived of the effective assistance of counsel with his present attorney.

In *Watkins v. State,* 59 Md.App. 705, 478 A.2d 326 (1984), we noted that claims of ineffectiveness of counsel are normally left to post-conviction hearing and that the trial courts do not "have a constitutional duty to conduct a specific evidentiary-type inquiry 'whenever they are confronted with those types of allegations.'" *Id.* at 715, 478 A.2d 326. As we have already stated that ineffectiveness of counsel is the only claim that an indigent defendant can make in requesting different counsel, the lower court's failure to address it on the day of trial, while a technical violation of Rule 4–215(e), does not, in and of itself, violate the constitutional mandate that the same rule is designed to protect.[3] In application to this case, we hold that a refusal by the trial court to allow an indigent defendant to specify his reasons for requesting representation by a different attorney will only constitute reversible error where the defendant is denied the effective assistance of counsel. A

---

**3.** This holding is not in conflict with *Renshaw, supra.* In *Renshaw,* the Court of Appeals, in dictum, stated, "The court must, of course, make appropriate inquiries *when a defendant claims he is not being adequately represented." Id.* 276 Md. at 270, n. 6, 347 A.2d 219 (emphasis added). The *Renshaw* court did not discuss the result on appeal where rule 4–215(e) is violated, but there was no allegation or evidence that the defendant had been denied effective assistance of counsel. Further, the defendant in this case has not made any such claim, even on appeal. If such a claim were implied within his request for another representative, the lower court addressed it with a finding that defendant's counsel was competent and prepared, and that defendant's claim appeared to be a dilatory tactic. Our review of the record does not indicate otherwise.

*per se* rule of reversal "is only warranted where the error is of the type that threatens the overall reliability of the trial." *Wooten–Bey v. State,* 76 Md.App. 603, 613, 547 A.2d 1086 (1988).[4]

In the case *sub judice,* the defendant was afforded representation by a public defender. In denying the defendant's request for another attorney, the lower court stated that the defendant's attorney was "well-prepared" and "highly respected." He also indicated that the defendant's request, coming on the date set for trial, might be for the purposes of delay. Subsumed within rule 4–215's purpose to protect a defendant's Sixth Amendment rights is the mechanism to determine if the defendant's desire to discharge counsel is meritorious. (Minutes of Court of Appeals Standing Committee on Rules of Practice and Procedure, Sept. 10, 11, 1982).

The Supreme Court in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), held that a defendant, in alleging ineffective assistance of counsel, must show that the counsel's performance was deficient *and* that the deficient performance prejudiced the defense. *Id.* at 687, 104 S.Ct. at 2064. This standard has been adopted by the appellate courts in Maryland. *See State v.*

---

**4.** In fact, a trial court's violation of a mandatory rule of criminal procedure has previously been held to be harmless error. In *Noble v. State,* 293 Md. 549, 568–69, 446 A.2d 844 (1982), the Court of Appeals examined the effect of a trial court's violation of former Maryland Rule 724 (defendant's right to be present at every stage of trial), and concluded:

> We hold, therefore, that the harmless error principle is fully applicable to a defendant's right to be present during a stage of the trial. Prejudice will not be conclusively presumed. If the record demonstrates beyond a reasonable doubt that the denial of the right could not have prejudiced the defendant, the error will not result in a reversal of his conviction.

*Id.* at 568–69, 446 A.2d 844. Subsequent to *Noble,* the Court of Appeals has applied the harmless error rule where the provisions of Rule 4–245(b) (formerly Rule 734), dealing with notice provisions where state intends to seek punishment under enhanced sentencing statute, were violated. *King v. State,* 300 Md. 218, 477 A.2d 768 (1984).

*Tichnell,* 306 Md. 428, 441, 509 A.2d 1179 (1986); *State v. Dowdell,* 73 Md.App. 172, 181, 533 A.2d 695 (1987); *Carter v. State,* 73 Md.App. 437, 440, 534 A.2d 1015 (1988). It would be an absurd proposition that prejudice need not be shown by the defendant where a procedural rule has been violated, while prejudice must be alleged and proven where the Sixth Amendment right that the procedural rule was designed to implement is violated.

*Appellant has yet to assign any reason for discharging trial counsel, let alone a meritorious one.* Even on appeal, defendant makes no arguments that his representation by counsel was less than adequate. *See Roberson v. State,* 741 S.W.2d 563 (Tex.App.1987) (no right to appointed counsel of choice, and no harm shown by court's denial of counsel's motion to withdraw where "attorney provided competent representation and a vigorous defense"). It is most reasonable to infer that if appellant had a meritorious reason for discharging counsel, he would have, at some point (on the motion for new trial or on this appeal), so stated. Under such circumstances, we refuse to hold that a technical violation of rule 4–215(e) constitutes reversible error where no violation of defendant's Sixth Amendment rights (the same rights that rule 4–215 was created to protect) has occurred. *Cf. United States v. Seidel,* 620 F.2d 1006, 1013 (4th Cir.1980) (In the absence of prejudice, violation of criminal joinder rule is harmless error).

This holding is not at all in conflict with *Maus v. State,* 311 Md. 85, 532 A.2d 1066 (1987), a case cited by the defendant. In *Maus,* one of the appellants (Wilkes) was unrepresented at a probation revocation hearing. The trial court proceeded on the merits at the hearing without permitting the defendant to articulate the reason why he was unrepresented by counsel. This violation of rule 4–215(d) constituted reversible error because no determination was made as to whether the defendant waived his constitutional right to counsel.

Here, no contention was made by Mr. Williams, nor does the record indicate that he was denied the right to effective

assistance of counsel. Thus, under these facts, the trial court's violation of Rule 4–215(e) was harmless error.

II. *Motion for a New Trial (Inconsistent Verdicts)*

■ Because assault is not a felony or crime of violence as statutorily defined in Article 27, section 441(e), defendant moved for a new trial on the basis that the jury verdict, which found him guilty of using a handgun in the commission of a felony or crime of violence, was inconsistent with the acquittal on the charge of assault with intent to murder. The lower court denied defendant's motion for a new trial. Defendant appeals on the basis that the lower court failed to exercise its discretion in ruling on the motion for a new trial.

It is not disputed that inconsistent jury verdicts of conviction on a charge of unlawful use of a handgun in the commission of a felony or crime of violence and acquittal of all charges of felony or crimes of violence may be upheld. *See Mack v. State,* 300 Md. 583, 479 A.2d 1344 (1984); *Ford v. State,* 274 Md. 546, 337 A.2d 81 (1975). As most recently articulated in *Shell v. State,* 307 Md. 46, 512 A.2d 358 (1986):

> Thus, convictions based on inconsistent jury verdicts are tolerated because of the singular role of the jury in the criminal justice system. As stated in *Ford, supra,* 274 Md. at 553, 337 A.2d 81, there is a "reluctance to interfere with the results of unknown jury interplay," at least without proof of "actual irregularity." Ample precedent in Maryland and in other jurisdictions supports this practice. *Id.* at 551–553, 337 A.2d 81. The general view is that inconsistencies may be the product of lenity, mistake, or a compromise to reach unanimity, and that continual correction of such matters would undermine the historic role of the jury as the arbiter of questions put to it.

*Id.* at 54, 512 A.2d 358.

In *Mack,* the Court of Appeals held that where a jury renders inconsistent verdicts contrary to the court's instruc-

tion, the trial court may exercise its discretion to determine whether a new trial is warranted.[5] *Id.* 300 Md. at 601, 479 A.2d 1344. In determining whether the trial court refused or otherwise failed to exercise its discretion in resolving defendant's motion for a new trial, we will examine the pertinent excerpt of the court's ruling:

> THE COURT: All right. Thank you. Mr. Schenker, you can submit. I'm going to deny the motion for new trial on the basis that even though I properly instructed the Jury with respect to inconsistent verdicts in the Mack case, that notwithstanding my correct and what I thought were patently clear instructions, the Jury chose to render inconsistent verdicts. And it's clear in a Court of Appeals case that predates Mack which is *Ford v. State* found at 274 Maryland at page 552 [337 A.2d 81]. That consistency in the verdict is not necessary. That the verdict may have been the result of compromise or of a mistake on the part of the Jury is possible. *But, verdicts cannot be upset by speculation or inquiry to such matters.* The verdict shall stand.

The defendant relies on *Huffington v. State,* 295 Md. 1, 452 A.2d 1211 (1982) and *Williamson v. State,* 284 Md. 212, 395 A.2d 496 (1979), to support his contention that a trial court's decision may be reversed if it fails to exercise its discretion properly. *Huffington* involved a trial court decision to allow the State to introduce evidence after its case-in-chief had been presented, and, on appeal, the Court of Appeals' subsequent rejection of the State's argument

---

**5.** In *Ford,* the *Mack* ingredient of a jury acting contrary to the court's instructions was not present. The Court of Appeals intimated in that case that such an inconsistent jury verdict *could not* be reversed "without proof of an actual irregularity." *Ford,* 274 Md. at 553, 337 A.2d 81. Construing *Mack* and *Ford* together, we think that where the jury does not act contrary to the court's instruction, the court could not, in most cases, exercise its discretion to grant a new trial on the basis of inconsistent verdicts; however, where the jury acts in contravention to the court's express instructions to it, such an exercise of discretion may be accomplished. This case is more analogous to *Mack* than to *Ford* because the jury appears to have acted in contravention of the lower court's jury instructions.

that the trial court was exercising its discretion to vary the order of proof. That case is inapposite because no question regarding the court's failure to exercise its discretion properly existed in *Huffington;* there was only a finding that the court did not admit the testimony on the basis that the State argued it was admitted.

*Williamson v. State, supra,* involved an appeal from a first degree murder conviction. In that case, the defendant argued on appeal that the lower court refused to recognize its discretionary power to suspend all or part of a sentence in light of a pertinent Court of Appeals decision. The portion of the lower court transcript excerpted by the Court of Appeals is enlightening here:

THE COURT: As far as the murder conviction is concerned, *there's no choice.* She gets life.

MR. GLASER [defense counsel]: No, Your Honor, there is a choice. You can suspend part of it. I brought the *Wooten* case with me.

THE COURT: I understand that, and I completely disagree with Judge Raine and the Court of Appeals. I think the Legislature said when a person kills somebody else or causes them to be killed, it's life. So as far as I am concerned, the sentence on the murder charge is life.

.    .    .    .    .

MR. GLASER: I was going to comment to the Court on the *Wooten* case, but I guess I won't do that either.

THE COURT: No. I have very strong feelings about that.

The Court of Appeals concluded:

We think it evident from the comments of the trial judge that notwithstanding [*State v.*] *Wooten* [, 277 Md. 114, 352 A.2d 829 (1976)], he refused to recognize his discretionary power to suspend the mandatory life sentence or any part of it. In other words, the trial judge did not merely indicate disagreement with *Wooten,* he rejected it. As a consequence, the trial judge did not exercise the discretion that he possessed under *Wooten*

despite the appellant's request that he consider suspending part of the life sentence imposed upon her. By precluding any consideration of suspending any part of the life sentence, the trial judge denied appellant's right to a proper exercise of the discretion vested in him. *Id.* at 215, 395 A.2d 496.

We do not "think it evident" that the lower court failed to exercise its discretion in the case before us. Defendant's whole argument hinges on the phrase, "But verdicts cannot be upset by speculation or inquiry to such matters," with special emphasis on the word "cannot." We do not see the court's ruling, without more, to be a clear-cut failure to exercise its discretion. In fact, we believe it is clear that the court exercised its discretion in refusing to grant the defendant's motion for a new trial by citing a case that supports the proposition that inconsistent jury verdicts may stand. The excerpt of the lower court's ruling is taken word for word from a case quoted in *Ford, supra,* to support the proposition "that a conviction on one count need not be vacated because of an inconsistent not guilty verdict on another count." *See Ford, supra,* 274 Md. at 552, 337 A.2d 81 (citing *Dunn v. United States,* 284 U.S. 390, 393–94, 52 S.Ct. 189, 190–91, 76 L.Ed. 356 (1932)). In the absence of any persuasive evidence to the contrary, we find it appropriate to note the oft-used adage that a trial court is presumed to know the law and to apply it correctly. *Levitt v. Maryland Deposit Ins. Fund,* 66 Md.App. 524, 541–42, 505 A.2d 140 (1986); *Craddock v. State,* 64 Md.App. 269, 279, 494 A.2d 971 (1985); *Hebb v. State,* 31 Md.App. 493, 499, 356 A.2d 583 (1976).

JUDGMENTS AFFIRMED; COSTS TO BE PAID BY APPELLANT.

ROBERT M. BELL, Judge, dissenting.

Permitting a defendant to articulate his reasons is but a prelude to the requirement of Maryland Rule 4–215(e) that the court assess the merit of a defendant's request to discharge his counsel. It is also but a preliminary step to

the requirement that the court advise the defendant, in accordance with that assessment, of the consequences of his decision. In the latter regard, it is important that the Rule prescribes different consequences to flow from the court's determination that the reason for the discharge is meritorious than from a determination that it is not. In the former situation, the court must permit the defendant to discharge his counsel, continue the case, if necessary, and advise the defendant that the case will proceed on the next scheduled date even if new counsel does not enter an appearance prior to that date. In the latter situation, on the other hand, the court may not permit the defendant to discharge his counsel unless he still wishes to do so after the court has advised him that the trial will not be postponed, but will proceed even though the defendant is unrepresented by couns⁔ Thus, notwithstanding that the requirement that appell. ᵥ be permitted to explain his reasons for wishing to discharge counsel is stated first in the Rule, at its heart are the assessment and advice requirements.

The requirements of Maryland Rule 4–215, including subsection (e) thereof, are mandatory, *Parren v. State*, 309 Md. 260, 280, 523 A.2d 597 (1987); *Snead v. State*, 286 Md. 122, 130, 406 A.2d 98 (1979); *Thompson v. State*, 284 Md. 113, 123, 394 A.2d 1190 (1978); *State v. Bryan*, 284 Md. 152, 154–55, 395 A.2d 475 (1978); *Argabright v. State*, 75 Md. App. 442, 457, 541 A.2d 1017 (1988), requiring strict, rather than "substantial compliance". *Parren*, 309 Md. at 280, 523 A.2d 597. A failure to comply with the requirements of the rule is reversible error. *Argabright*, 75 Md.App. at 457, 541 A.2d 1017. *See Thompson*, 284 Md. at 122, 126, 394 A.2d 1190.

While acknowledging that the trial court violated Rule 4–215(e), the majority narrowly defines the violation. Thus, it characterizes the violation as the refusal to permit appellant to articulate his reasons for wishing to discharge counsel. Armed with this premise, it proceeds to focus upon what did not occur, *i.e.*, that appellant did not ask to represent himself; that appellant was not tried without

counsel; and that appellant has not argued, on appeal, that he was denied effective assistance of counsel. Having established these negatives, the majority concludes "no harm, no foul." The majority's analysis completely misses the point.

Characterizing the violation as the court's refusal to permit appellant to articulate his reasons for wishing to discharge counsel is much too narrow; indeed, it is but an aspect of the violation. As I have pointed out already, the articulation of reasons for discharging counsel serves the function of triggering action by the court, the ultimate purpose of which is to ensure that the defendant has sufficient information upon which to make a knowing and intelligent choice regarding the discharge of counsel. In my view, the defendant's need to articulate reasons and the court's obligation to act upon those reasons are inseparable. Accordingly, I submit that the court violated all of the requirements of the rule and, further, that the violation was unequivocal.

It is true that appellant did not ask to be allowed to represent himself; however, it is also true that he was not afforded the opportunity to do so after having received the advice the court was required to give him. It is true that appellant did not proceed to trial without the assistance of an attorney; here again, it is also true that he was never given the opportunity to express the preference to do so, nor given any advice upon the basis of which he could assess the viability of that option. It is true that appellant has not complained that he was denied effective assistance of counsel; but it is also true that, given the court's utter failure to comply with the requirements of the rule, such a complaint is not necessary.

The majority's view of the consequences of a trial court's failure to comply with the requirements of Rule 4–215 is reminiscent of the argument made by the State in *Parren*. Relying on the "Rules of Construction", set forth in Rule 1–201(a) [1]. The State argued that, since there were no

---

1. That section, in pertinent part, provides:

consequences prescribed for noncompliance, an appellate court, notwithstanding the fact that the rule is mandatory, may permit judgments to stand upon an evaluation of the totality of the circumstances. The Court in *Parren* rejected the argument, noting that the consequences of non-compliance must be determined "in light of 'the purpose of the rule' violated." 309 Md. at 281, 523 A.2d 597. At issue in that case was the court's non-compliance with that portion of Rule 4–215(e) [2] which required the court, after permitting the discharge of counsel, to advise appellant in accordance with subsections (1)(1)–(4) of Rule 4–215(a). Characterizing the purpose of the rule as being "to protect that most important fundamental right to the effective assistance of counsel, which is basic to our adversary system of criminal justice" and emphasizing the longevity of the provision requiring that an accused have knowledge of the allowable penalty for charges against him or her, the Court said:

> In light of all of this we would be reluctant indeed to conclude that noncompliance with such an essential part of our Waiver Rule be determined on an *ad hoc* basis. We think that to do so would erode Rule 4–215 and seriously encroach upon its purpose to protect the constitutional right to counsel. We believe that such a holding would enhance complexity rather than secure simplicity in procedure, tend to unfairness rather than fairness in administration, and, in the long run, promote, rather than eliminate unjustifiable expense and delay.

309 Md. at 282, 523 A.2d 597. This statement is equally applicable in the circumstance here presented. Where, as here, the trial court refuses to permit an accused to state

---

When a rule, by the word "shall" or otherwise, mandates or prohibits its conduct, the consequences of noncompliance are those prescribed by these rules or by statute. If no consequences are prescribed, the court may compel compliance with the rule or may determine the consequences of the noncompliance in light of the totality of the circumstances and the purpose of the rule.

**2.** At the time *Parren* was decided, subsection (e) was designated subsection (d). By amendment dated April 7, 1986, effective July 1, 1986, that designation was changed to subsection (e).

706

his reasons for wishing to discharge counsel, thereby, relieving itself of the obligation to assess the merits of the request and, in addition, relieving itself of the obligation of advising appellant as to the consequences of the options available to him, the rights protected by the rule are no less infringed than in a case where, after the court has substantially complied with the rule, appellant actually discharges counsel. To hold as the majority does is to permit substantial compliance to be sufficient and render the rule permissive, rather than mandatory.

I think the majority holding is wrong and, therefore, I dissent.